**Jack L. KOEHR, and Patricia C. Koehr, Appellants,**

v.

**Linda EMMONS, Collector of Franklin County, et al., Respondents.**

No. ED 78152.

Missouri Court of Appeals, Eastern District, Division Three.

July 24, 2001.

Motion for Rehearing and/or Transfer to Supreme Court Denied Sept. 6, 2001.

Application for Transfer Denied Oct. 23, 2001.

James J. Wilson, St. Louis, for appellants.

Thomas E. Tueth, Geoffrey G. Gerber, St. Louis, for respondents.

CRAHAN, Presiding Judge.

Jack and Patricia Koehr, individually and as purported representatives of a class of ad valorem taxpayers, appeal the judgment in favor of the Junior College District of East Central Missouri ("District") on their claims seeking declaratory relief and refunds of taxes allegedly levied in violation of the Hancock Amendment, Mo. Const. Art. X, Sec. 22. We affirm in part and reverse and remand in part.

On March 11, 1998, having paid their 1997 taxes under protest, the Koehrs filed a petition against the Franklin County Collector seeking a refund of taxes allegedly levied in excess of the limits set forth in the Hancock Amendment.[1] Count I sought a refund of $323.80, the amount the Koehrs had paid under protest on December 15, 1997, plus interest. Count II sought a refund of all 1997 taxes allegedly wrongfully levied against a class comprised of all ad valorem taxpayers of Franklin County, with the Koehrs acting as class representatives.

On July 20, 1998, the Koehrs filed their first amended petition which added each of the tax districts to whom the Koehrs paid taxes as additional defendants.[2] The first amended petition sought a refund of the amounts the Koehrs paid under protest in 1997 and, on behalf of a class comprised of all Franklin County ad valorem taxpayers, (1) a declaration that the 1997 taxes exceeded the limits fixed by the Hancock Amendment, (2) an injunction against further collection without a tax rollback, (3) a refund or credit on 1998 tax bills, (4) costs and expenses, including attorney's fees, (5) a declaration that the 1998 levy, which had not yet been established, would yield excess revenue and (6) an order requiring the districts to set rates for 1998 so that the yield would not exceed the lawful yield for 1997.

On September 16, 1998, over objection, the trial court entered an order authorizing a plaintiff class pursuant to Rule 52.08(a), (b)(1)(A)-(B) and (c)(4). Mr. and Mrs. Koehr were designated class representatives for a class comprised of all ad valorem taxpayers of Franklin county with separate subclasses for the Franklin County taxpayers of each defendant taxing district.

On October 6, 1998, the Koehrs filed a second amended petition which was essen-

---

1. The essence of the Koehrs' claim is a dispute over the method of rounding used in adjusting the tax levy to reflect mandatory rollbacks required by the Hancock Amendment and by statute to account for increases in assessed valuation. The methodology at issue has since been changed by statute. Section 137.073.6 RSMo Supp.2001. In view of our disposition, we need not lengthen this opinion with a detailed explanation of the details of the dispute.

2. The taxing districts added as defendants were: Franklin County, Franklin County Road District, Strain–Japan School District R–16, Sullivan Fire District, Franklin County East Central Community College, Scenic Regional Library and Franklin County Board of Handicapped. Strain–Japan School District R–16 was later voluntarily dismissed from the suit without prejudice.

tially identical to the first amended petition but omitted the previous prayer for an order requiring the districts to set rates for 1998 so that the yield would not exceed the lawful yield for 1997.

On June 29, 1999, Mr. Koehr, who is an attorney, entered his appearance as co-counsel for the plaintiffs. On July 14, 1999, the Koehrs filed a third amended petition adding claims by the Koehrs seeking a refund of 1998 taxes paid under protest and claims on behalf of the various subclasses against each taxing district seeking declaratory relief and refunds of 1998 taxes. On November 2, 1999, the Koehrs filed a fourth amended petition adding claims for tax years 1995 and 1996.[3]

In September and December of 1999 the trial court entered consent judgments purporting to resolve all claims against all defendants except District. These judgments contained findings that the rounding formula prescribed by the State Auditor and utilized by the settling defendants resulted in an unconstitutional application of section 137.073 RSMo 1994. The judgments established new, lower tax rate ceilings for the affected defendants, set temporary lower tax rates to offset some of the alleged excess taxes collected in prior years and awarded attorney's fees, approximately $20,000 of which went to Mr. Koehr. The trial court later entered a clarifying order explaining that these "judgments" were actually settlements to which the parties had agreed and were not intended as an adjudication of any issues in the case.[4]

After deposing the Koehrs, District moved to dismiss the class claims against it on the ground that neither Mr. Koehr nor Mrs. Koehr could adequately represent the interests of the purported class. Mrs. Koehr freely admitted that all she knew about the case was what her husband told her, that she was unaware of the status of the case or the amount in issue and that she did not participate in any decisions pertaining to the case. District claimed Mr. Koehr was not a proper representative because he had a conflict of interest in acting as attorney for the class and had accepted money as fees which reduced the purported class's recovery. In an effort to resolve his alleged conflict, Mr. Koehr withdrew as attorney for the class. District's motion was denied.

At the conclusion of the trial on the merits, the trial court entered judgment in favor of District. In its findings of fact and conclusions of law, the trial court found that due to the necessity of rounding and the then inability of many taxing authorities to implement tax rates levied in fractions of a cent, some imprecision was inherent in the process. The trial court further found that the degree of imprecision resulting from the rounding process prescribed by the State Auditor and utilized by District was not so significant as to constitute a violation of the Hancock Amendment.

■ Although District vigorously defends these findings on appeal, it also offers several alternative grounds to support the judgment. We may, of course, affirm the judgment for any reason supported by the record. *Arthur v. Jablonow,* 665 S.W.2d 364, 365 (Mo.App.1984). Specifi-

---

3. On February 16, 2000, the Koehrs moved to amend the fourth amended petition by interlineation to add claims for refunds for the 1999 tax year. We find no indication that this motion was ever ruled upon.

4. Although the issue is not before us, it is disturbing to note that there is no indication in the record that these "judgments" were ever the subject of a hearing or that any notice of these consent judgments was ever given to the class or any subclass thereof.

cally, District urges that the trial court properly entered judgment in its favor because the claims for refunds were untimely, the Koehrs were not proper class representatives and the Koehrs failed to join indispensable parties. Although all of these contentions appear to have merit, the first is dispositive.

As support for the contention that the claims for declaratory relief and refunds are untimely, District draws our attention to Judge Wolff's concurring opinion in *Green v. Lebanon R–III School Dist.*, 13 S.W.3d 278, 286–90 (Mo. banc 2000) (Wolff, J., concurring). Judge Wolff concluded that claims for refunds of taxes allegedly collected in violation of the Hancock Amendment must be asserted before the taxes become payable—*i.e.*, before December 31 of the tax year at issue. *Id.* at 287. Quoting from *Ring v. Metropolitan St. Louis Sewer Dist.*, 969 S.W.2d 716, 718–19 (Mo. banc 1998), Judge Wolff pointed out that enforcement of the right granted in the Hancock Amendment may be accomplished in two ways: (1) a suit to enjoin collection of the tax until its constitutionality can be determined, or (2) a *timely* action for a refund. Noting that, aside from a provision authorizing attorney's fees, the enforcement provision of the Hancock Amendment, section 23, is not a consent to a suit for a money judgment, Judge Wolff reasoned that an action for refunds must conform to statutory requirements. *Id.*

Judge Wolff pointed out the only civil action allowing taxpayers to challenge a tax levy contemplated by the statute, section 137.073.8 RSMo Supp.1999, is one for injunctive relief. *Id.* at 288. If such an injunctive action is timely instituted, the statute provides for refunds of amounts erroneously paid regardless of whether the taxes are paid under protest. Section 137.073.9 RSMo 2000. Judge Wolff reasoned that the pendency of the injunction suit gives the taxing authority notice of the challenge to its tax rate brought on behalf of all taxpayers, thus justifying the statutory waiver of the protest requirement. *Id.* However, neither chapter 137 nor chapter 163, which governs the state's foundation aid formula, makes any provision for revision of tax rates once they have gone into effect unless there has been an action to protest or challenge the rates prior to their becoming effective. *Id.* There is, however, a provision for adjustments for protested taxes due in the current year for which notice of the protest was received in the current year. *Id.* (citing section 163.031.6.2 RSMo 2000). Failure to require notice to the taxing authority prior to the date taxes are due would also be contrary to the purpose of the Hancock Amendment. *Id.* at 289. Finally, Judge Wolff pointed out that the time limitation on refunds found in section 137.073.9 is not a statute of limitations but a deadline for judicial action. *Id.* There is no statutory authorization for an action for refunds, only for an injunction or an order revising the tax rate.

Although we are not bound by Judge Wolff's opinion, we nonetheless find it persuasive and adopt it as a correct declaration of the law. Applying that analysis to the claims asserted by the Koehrs as purported class representatives compels the conclusion that none of the claims asserted are either proper or timely. The initial petition, filed on March 11, 1998, was not filed until well after the date the taxes were due. The first amended petition sought injunctive relief as to 1998 taxes but was premature because no tax rate had yet been established.[5] In any

---

**5.** Although it arguably requested injunctive    relief, it did not plead an adequate basis for

event, the request for injunctive relief was dropped in the subsequent petitions. The third amended petition sought refunds of 1998 taxes but did not seek injunctive relief and was not filed until July 1999, well after the taxes were due. The fourth amended petition, adding claims for refunds of 1995 and 1996 taxes was not filed until November 1999, again well after the taxes were due.

▆▆▆▆▆ Except for their individual claim for 1997 taxes paid under protest,[6] none of the claims for which the Koehrs sought class certification was timely filed. Because the Koehrs are the only named class representatives and their claims are time barred, the putative class lacks representation and should not have been certified. *See Great Rivers Cooperative of Southeastern Iowa v. Farmland Indus., Inc.,* 120 F.3d 893, 899 (8th Cir.1997).[7] Accordingly, we reverse the trial court's certification of a plaintiff class on the counts asserted against District. On remand, the trial court is directed to dismiss the class claims against District. The judgment on these claims is affirmed as to the Koehrs individually.

▆▆▆▆▆ As for the Koehrs claim for 1997 taxes paid under protest, even employing the rounding method the Koehrs advocate, which we do not agree is constitutionally required, the amount allegedly overpaid to District is just $4.04, or less than ten percent of the filing fee for this appeal. Particularly where the disputed method of computation has changed in the interim, such an insubstantial sum does not provide a proper foundation for finding a Hancock violation. As the Missouri Supreme Court observed in *Missourians for Tax Justice Educ. Project v. Holden,* 959 S.W.2d 100, 107 (Mo. banc 1997), "[t]he purpose of the tax and spending limitations contained in the Hancock Amendment is not thwarted if the calculation of the revenue limit is not accurate to the mill." We affirm the judgment in favor of District on this claim as well.

The trial court's certification of a plaintiff class is reversed. On remand, the trial court is directed to dismiss all claims for class action relief. The judgment in favor of District and against the Koehrs on their individual claims is affirmed.

DRAPER III and MOONEY, JJ., concurs.

relief. The first amended petition merely alleged that the tax rate for 1998 would produce more revenue than was produced in 1997. The Hancock Amendment, however, does not prohibit all increases. *Green,* 13 S.W.3d at 281 (increases due to new construction and increases in general price level permitted). Thus, we find that the first amended petition failed to state a claim with respect to 1998 taxes. Indeed, nowhere in any of the petitions do we find any allegation about improper rounding which would be sufficient to give District any semblance of notice as to precisely what was being challenged or any way to estimate the amount involved.

6. The Koehrs' claim for 1998 taxes paid under protest was untimely because it was not brought within ninety days of the protest. Section 139.031.2 RSMo 2000.

7. Because Missouri Rule 52.08 and Federal Rule 23 are identical, we consider federal interpretations of Rule 23 interpetrating Rule 52.08. *State ex rel. Byrd v. Chadwick,* 956 S.W.2d 369, 378 (Mo.App.1997).